# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 4, 2012

No. 11-11027

Lyle W. Cayce
Clerk

JAY ANTHONY NOTTINGHAM, also known as Sterling Harrison,
also known as James Andrew Armstrong, also known as Jay Thrasher,
also known as Hunter O'Brian, also known as Jay A. Notingham,
also known as Jay Anthony Nuttingham,
also known as Jay Anthony Mottingham, also known as Jay Dillian,
also known as Jay Nottingham, also known as Jeffery Andrew Montgomery,
also known as Jay Dillan, also known as Jeff Andrew Montgomery,
also known as Sterling Armstrong Harrison, also known as Jay Nothingham,
also known as Jeffrey Montgomery, also known as Jay Hamilton Sterling,

Plaintiff-Appellant,

versus

JOEL RICHARDSON, Sheriff Randall County;
TIM LACEY, Licensed Paramedics-Medical Contractor
for Randall County Sheriff's Department;
SCOTT DAVIS, Licensed Paramedic-Medical Department
of Randall County Sheriff's Department;
RONALD LACY, M.D., Medical Doctor
under whose license Medical Care is given at Randall County Jail;
RANDALL COUNTY COMMISSIONERS COURT;
CARROLL, Corporal, Correctional Officer, Randall County Jail;
JOE MORRIS, Lieutenant, Jail Administrator, Randall County Jail,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Texas
No. 2:10-CV-60-J

No. 11-11027

Before DAVIS, JONES, and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Jay Nottingham sued these defendants for harms allegedly suffered during his incarceration in the Randall County jail and during his transport to the Texas Department of Criminal Justice ("TDCJ"). Nottingham claimed that he was denied sufficient medical care and that he was not accommodated during his transport to TDCJ in violation of the Eighth and Fourteenth Amendments and the Rehabilitation Act ("RA") and Americans with Disabilities Act ("ADA"). The district court dismissed on multiple grounds, including failure to exhaust administrative remedies as required under the Prison Litigation Reform Act ("PLRA"), failure to state a claim based on the running of limitations, qualified immunity, and failure to state a claim upon which relief could be granted. We affirm.

I. Background.

A. Procedural History.

Jay Nottingham sued *pro se* under 42 U.S.C. § 1983 on March 22, 2010. He alleged violations of the Eighth and Fourteenth Amendments and the RA and ADA by Joel Richardson, Tim Lacey, Scott Davis, Ronald Lacy, Randall County Commissioners Court, Correctional Officer Carroll, Joe Morris, Randall County, and Panhandle Correctional Care. Defendants Lacey, Davis, and Lacy filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing that Nottingham's claims were time-barred and that the complaint contained insuf-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-11027

ficient information regarding dates. Nottingham was ordered to amend.

After Nottingham filed his First Amended Complaint, defendants moved for dismissal under Rule 12(b)(6), and, at the request of the court, filed a joint motion for summary judgment on the ground that Nottingham had not exhausted his administrative remedies as required under the PLRA. In response, Nottingham filed multiple answers and a motion requesting appointment of counsel.

Nottingham amended his complaint on December 13, 2010, and filed for leave to amend again in May 2011. Leave was granted to add Randall County as a defendant. The district court granted the Randall County Commissioners Court's motion to dismiss on the ground that it was not an entity that could be sued. The magistrate judge ("MJ") denied Nottingham's motion for appointment of counsel.

On June 1, 2011, the MJ conducted an evidentiary hearing. On September 13, 2011, he issued his report and recommendation that the motions to dismiss and for summary judgment be granted. Nottingham objected to the recommendation and report.

The district court adopted the recommendations and dismissed. It did so with prejudice on the claims against Richardson, Lacey, Davis, Lacy, Carroll, Morris, and Randall County as time-barred. It also dismissed all claims against those parties for failure to exhaust administrative remedies. It further dismissed as against Lacey, Davis, Lacy, and Randall County for failure to state a claim under the ADA. It finally adopted the MJ's finding that Lacey, Davis, and Lacy were entitled to qualified immunity. It did not address the MJ's denial of appointment of counsel. Nottingham again unsuccessfully moved for appoint-

3

No. 11-11027

ment of counsel.  Nottingham appealed.

B.  Factual Background.

Nottingham was booked into the Randall County jail on January 28, 2008, when he was examined by Scott Davis, a licensed paramedic at the Medical Department of the Sheriff's Department.  Nottingham told Davis that he was taking a prescribed an anti-seizure medication, Dilantin, in liquid form for ease of administration.  Davis changed Nottingham's medication to pill form.  He asked Nottingham for his medical records, which Nottingham said he could not provide.  Nottingham, who has a weakened right side due to a previous stroke, asked for a regular wheelchair rather than a transport wheelchair, but that request was denied.  He was able to walk at times with a cane and otherwise made use of the transport wheelchair.

The next day, Nottingham saw Tim Lacey, a licensed paramedic who did contract work for the Sheriff's Department.  Lacey lowered Nottingham's dosage of Dilantin and told him to report back if he had any trouble.  Nottingham asked to see a physician but was not permitted to at that time.  Lacey requested Nottingham's medical records, and Nottingham responded that Lacey already had them, which he did not.

Two days later, Davis visited Nottingham's cell because Nottingham had reported he felt ill.  Nottingham offered conflicting accounts of what occurred.  In one, he stated that he was having a seizure and that Davis walked away.  In the second version, he alleged that he told Davis he was going to have a seizure, and Davis walked away.

On February 4, Davis attempted to draw blood from Nottingham to test

4

No. 11-11027

his medication levels. Nottingham refused to provide blood. Nottingham ceased eating, claiming he could not keep down food, and the prison officials considered him to be on a hunger strike, so they removed his commissary privileges. Lacey learned of this and had Nottingham's commissary privileges reinstated. Nottingham again offered conflicting accounts of this chain of events; in one account, he claims that Davis told him his commissary privileges would be removed if he did not eat the regularly provided food, and in another Davis is not mentioned.

Lacey prescribed a liquid diet of Ensure for Nottingham, but Nottingham claimed he could not keep the food down. On February 25, Nottingham was switched back to solid foods. He alleges he again asked to see Lacy but that request was not answered. Nottingham claims he submitted a grievance on this date, but there is no record of it.

On March 17, Nottingham again claimed he was sick and was seen by Lacey, but no action was taken other than an examination. On March 19, Nottingham again complained he felt ill and was seen by Lacey, who diagnosed him with thrush. Lacey prescribed Immodium and mouth wash. Nottingham claims that he complained to Carroll of pain in his kidneys at some point in March, but there is no record of that complaint. Nottingham asserts that his blood and urine were tested on March 22 and that those tests showed that his Dilantin levels were low, but again there is no record of any tests or test results.

On March 25, 2008, Nottingham was transferred to the custody of TDCJ. He claims he was transported in a van that was not handicapped-accessible and that he fell off the bench on which he was seated. He avers that he was unable to get up and was left on the floor for the fourteen-hour drive, even when the officers stopped to eat and use the restrooms. Nottingham alleges that when he

No. 11-11027

arrived in TDCJ custody, he was severely ill and that his medical conditions had been ignored by Lacey. He also alleges that he suffered permanent damage to his kidneys.

## II. Standard of Review.

Summary judgments are reviewed *de novo*. See *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 213 (5th Cir. 1999). Summary judgment is appropriate where, taking the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* FED. R. CIV. P. 56(a).

Dismissal under Rule 12(b)(6) is disfavored and "rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982). A claim may not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). The "strict standard of review under rule 12(b)(6) has been summarized as follows: 'The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief.'"[1]

## III. Discussion.

The district court dismissed on a number of alternative grounds, including

---

[1] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 601 (1969)).

No. 11-11027

failure to state a claim based on the running of the statute of limitations, failure to state a claim based on qualified immunity, failure to state a claim upon which relief can be granted, and failure to state a claim based on a failure to exhaust administrative remedies. The first three grounds resulted in dismissal with prejudice; the final ground resulted in dismissal without prejudice.

Two of the grounds for dismissal were on motions to dismiss under Rule 12(b)(6). When deciding such motions, a district court must limit its analysis to the facts alleged in the pleadings. *See Collins*, 224 F.3d at 498. Where the court considers information outside the pleadings, the motion to dismiss is converted to a motion for summary judgment under Rule 56. *See Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 745 (5th Cir. 1986). The district court looked outside the pleadings and reviewed testimony from Nottingham's wife, among other things. It therefore treated the motions for dismissal as motions for summary judgment, even though it did not explicitly say that was the case.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e. This includes actions under § 1983 and the ADA. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002).

We interpret the PLRA strictly. "Prisoners must [ ] exhaust all 'available' remedies . . . even where the relief sought . . . cannot be granted by the administrative process." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). We "have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion; instead, we have required prisoners to exhaust available remedies properly." *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010). Where

No. 11-11027

any administrative process remains uncompleted, the requirements of the PLRA are not met, and dismissal is proper.[2]

The overwhelming evidence is that Nottingham did not exhaust, or even attempt to exhaust, the available administrative remedies while at the county jail or after his transfer to TDCJ. There is no evidence, other than his own assertions, that Nottingham filed a single grievance during his nearly sixty days at the jail or at any point after his transfer, and he did not present a copy of any complaint. Additionally, in his complaint initiating this suit, he stated that "[h]ad [he] known these facts during [his] incarceration at Randall County, [he] would have filed the grievance procedures against Randall County at that time."

Only after defendants filed their joint motion for summary judgment for failure to exhaust did Nottingham make any claims regarding filing grievances. He claimed that a page, in which he explained that he had exhausted his administrative remedies, had been accidentally omitted from his original complaint. He also contended, only after receiving the joint motion for summary judgment, that he had attempted to file grievances but that they were either destroyed or never returned. This conflicting, self-serving testimony, coupled with the absence of any evidence of complaints and the statements of prison officials that no complaints were filed, leads us to conclude that Nottingham did not exhaust his administrative remedies.[3]

---

[2] *See Robinson v. Wheeler*, 338 F. App'x 437, 438 (5th Cir. 2009) (upholding dismissal on lack-of-exhaustion grounds where prisoner was told that he could re-file a grievance before the suit was initiated); *Simkins v. Bridges*, 350 F. App'x 952, 953 (5th Cir. 2009) (upholding dismissal for lack of exhaustion where prisoner did not appeal denial of his initial grievance as required).

[3] Nottingham argues, in his reply brief, that this lack of exhaustion should be forgiven
(continued...)

8

No. 11-11027

Nottingham argues that no administrative remedies were "available" because he was transferred from Randall County to TDCJ. Where "'the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint,' exhaustion is not required under the PLRA because there is no 'available' remedy." *Dillon*, 596 F.3d at 267 (quoting *Booth v. Churner*, 532 U.S. 731, 736 (2001)). In *Dillon*, we remanded for further factual findings where the district court had not determined whether administrative remedies were "available" following a transfer. That case, however, is not the one before us. There, the inmate had attempted to file grievances at the first facility following the transfer but was barred from doing so. Additionally, he claimed to have filed grievances at the facility to which he was transferred. Nottingham presented no evidence that he tried to file grievances while in Randall County or TDCJ custody. He further presented no evidence that he could not have filed grievances concerning conduct at Randall County while in TDCJ custody. He offered only unsupported assertions that he could not file grievances, but that is not enough.

"[E]xhaustion is a threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time." *Id.* at 272. The evidence, considered even in the light most favorable to Nottingham, shows that he neither exhausted his available administrative process nor established that administrative remedies were not available to him.

The failure to exhaust does not deprive courts of subject-matter jurisdic-

---

[3] (...continued) because the grievance guidelines were difficult to understand and incomplete. "For obvious reasons, our court generally will not consider an issue raised for the first time in a reply brief." *United States v. Rodriguez*, 602 F.3d 346, 360 (5th Cir. 2010).

tion in suits covered by the PLRA. *Id.* at 271. A claim that has not been exhausted is generally to be dismissed without prejudice such that the plaintiff can file grievances and, if the problem is not resolved, re-file his suit. Here, however, the district court dismissed the claims with prejudice, in part for failure to state a claim under § 1983. We therefore analyze whether the claims should be dismissed with prejudice.

The core of Nottingham's claims is that his rights under the Eighth and Fourteenth Amendments and the RA and ADA were violated. He claims that he did not receive adequate food or medical care while a pretrial detainee and prisoner at Randall County jail and that his transport to TDCJ did not comply with the reasonable accommodations required by the RA and ADA.

Under the Eighth Amendment, prisoners are entitled to adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Pretrial detainees are similarly entitled to adequate medical care. *See Hare v. City of Corinth, Miss.*, 74 F.3d 633, 649 (5th Cir. 1996) (en banc) (holding that pretrial detainees have the right to adequate food and medical care). "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Gamble*, 429 U.S. at 105. To establish such "deliberate indifference," a claimant must at minimum establish that a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842.

In examining whether the defendants acted with deliberate indifference toward Nottingham's medical condition, we limit our inquiry to the defendants' actions within the period of limitations. Statutes of limitations serve as absolute bars to suit. For suits under § 1983, "state law supplies the applicable limita-

No. 11-11027

tions period and tolling provisions." *Harris v. Hegmann*, 198 F.3d 153, 157 (5th Cir. 1999). Federal law, however, determines when the cause of action accrues. *Id.* at 156–57. Texas law sets a two-year period of limitations for personal injury. TEX. CIV. PRAC. & REM. CODE § 16.003. Under federal law, a claim accrues when "the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured."[4]

Nottingham was in the custody of Randall County until March 25, 2008, and sued on March 22, 2010. This would generally mean, as the district court concluded, that all claims arising before March 22, 2008, are barred. Nottingham argues, however, that the continuing-tort doctrine saves these claims. Under that doctrine, a claim for a "continuing tort" does not accrue until the tort has ceased. *See Lavellee v. Listi*, 611 F.2d 1129, 1132 (5th Cir. 1980). The continuing-tort doctrine is one of accrual and thus a question of federal, rather than state, law.[5]

The continuing-tort doctrine is inapposite here and does not save any of Nottingham's claims that accrued before March 22,2008. Although his general complaint was that he received "inadequate" medical care, each instance of potentially deliberate indifference ceased when he received medical attention. *See Lavellee*, 611 F.2d at 1132. During his incarceration at Randall County jail of less than sixty days, Nottingham was seen by paramedics Lacey and Davis on

---

[4] *Russell v. Bd. of Trustees of Firemen, Policemen & Fire Alarm Operators' Pension Fund of Dall., Tex.*, 968 F.2d 489, 493 (5th Cir. 1992) (citations omitted).

[5] *See Dyer v. Conoco, Inc.*, 49 F.3d 727 (5th Cir. 1995). Although we have consulted state law in reference to the continuing-tort doctrine related to § 1983 claims, *see, e.g., Tuft v. Texas*, 410 F. App'x 770, 774 (5th Cir. 2011), those unpublished opinions are not precedential and do not analyze the question in any detail.

more than twenty occasions, according to his medical records. He was given examinations, medical care, prescription medication, and a special diet, among other things. There was no continuing denial of medical care and thus no continuing tort. All claims before March 22, 2008, are thus time-barred and were properly dismissed.

As for the Eighth Amendment claims arising between March 22 and March 25, 2008, Nottingham failed to provide evidence of deliberate indifference to medical needs, and those claims were thus properly dismissed on summary judgment. Nottingham's only allegations during that period were that he underwent blood and urine tests on March 22, that his levels of Dilantin were "dangerously low" and that he was not provided appropriate care, and that he was not given adequate care during his transfer to TDCJ.

None of these claims is supported by the record. There is no indication that Nottingham saw any of the health staff on March 22. There are notations on his medical records for visits on March 1, 2, 5, 10, 16, 20, and 23. There is a letter from Lacey on March 12 discussing Nottingham's medications and condition, and it was to be provided to TDCJ such that they could continue caring for Nottingham. Despite the extensive record here, there is no record of any tests' having been performed on March 22. Further, Nottingham has not provided information as to who administered those tests or where the results are. Furthermore, there is no indication that anyone in the prison knew of those alleged tests. Deliberate indifference requires knowledge of a medical condition.

There also is no evidence that anyone at Randall County knew of Nottingham's alleged medical ailments between March 22 and March 25, when he was transferred. Throughout his time at Randall County, Nottingham was seen on

a nearly daily basis by paramedics and was provided with medications, a special diet, and nutritional supplements.

Similarly, during his transfer, even assuming, *arguendo*, that Nottingham was knocked to the floor of the van, no one at the Randall County facility was aware of the harm, and they therefore could not have been deliberately indifferent. There is thus no indication that the medical staff was indifferent to any suffering while Nottingham was in the custody of Randall County between March 22 and 25. Dismissal under the Eighth and Fourteenth Amendment was thus proper on these grounds.

The district court also properly dismissed Nottingham's claim under the RA, 29 U.S.C. § 794, which prohibits discrimination against individuals with disabilities in federally-funded institutions. Nottingham offered no evidence that the Randall County jail received federal funds, so the RA is inapplicable to his claims.

To the same effect, Nottingham's claims under the ADA were properly dismissed on summary judgment.[6] Under the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A plaintiff must show "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity

---

[6] As a threshold matter, Nottingham may not sue the defendants here in their individual capacities. We held in *Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999), that only the public "entity" was amenable to suit under the RA, and we have repeatedly noted that, because the rights and remedies under the ADA and the RA are the same, caselaw interpreting one statute can be applied to the other. *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 287–88 (5th Cir. 2005).

No. 11-11027

is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). To have a qualifying disability, a plaintiff must demonstrate "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id.* at 499–500 (internal quotations omitted).

Nottingham's initial complaint said that he suffered from flu and thrush during his transport to TDCJ and that his lack of medical care was a violation of the ADA. Those conditions, however, are not qualifying disabilities but are temporary and do not rise to the level of an impairment of major life activities. Nottingham's limited ability to walk, however, may quality as a disability, and we assume this to be the case.

Nottingham, however, must still show that he was discriminated against based on that disability. He argues on appeal that because he was allegedly left on the floor of the transit van from Randall County to TDCJ and not given the opportunity to use the restroom, he was discriminated against and not given safe transit as a disabled person. That claim, however, does not establish discrimination based on disability: The ADA is not violated by "a prison's simply failing to attend to the medical needs of its disabled prisoners."[7] There is no evidence that the allegedly improper action of leaving Nottingham on the floor of the transit van had any connection to his alleged disability. There is no indication that he

---

[7] *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *see also Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n. 14 (1999) ("We do not in this opinion hold that the ADA imposes on the States a 'standard of care' for whatever medical services they render, or that the ADA requires States to 'provide a certain level of benefits to individuals with disabilities.'").

was treated differently because of his disability.  He thus has not established a claim under the ADA.

We finally address Nottingham's contention that the district court should have appointed counsel.  The denial of counsel is reviewed for abuse of discretion.  *United States v. Nichols*, 30 F.3d 35, 36 (5th Cir. 1994).  Nottingham moved for counsel under 28 U.S.C. § 1915 and 18 U.S.C. § 3006A.  Under § 1915, a court may appoint counsel for plaintiffs proceeding *in forma pauperis*, but because Nottingham did not proceed *in forma pauperis*, he is not entitled to counsel under § 1915.  *See Gonzalez v. Carlin*, 907 F.2d 573, 580 (5th Cir. 1990).  Section 3006A is similarly limited to appointment in only certain types of cases; claims under § 1983 and the ADA are not included.  The district court did not abuse its discretion in denying appointment of counsel.

The judgment is in all respects AFFIRMED.