# United States Court of Appeals
# for the Fifth Circuit

———————

No. 22-50066

———————

United States Court of Appeals
Fifth Circuit

**FILED**
June 30, 2023

Lyle W. Cayce
Clerk

Eddie Lee Wilson; Chester Jackson, Sr., *as next friend*
Chester Jackson, Jr.,

*Plaintiffs—Appellants*,

*versus*

Robert Riley Baucom; Deputy John K. Bennett; City of
Caldwell; Burleson County,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:20-CV-311

———————————————————————

Before Dennis, Engelhardt, and Oldham, *Circuit Judges*.

Per Curiam:[*]

Appellants Eddie Lee Wilson ("Wilson) and Chester Jackson, Sr. ("Jackson Sr."), as next friends to Chester Jackson, Jr. ("Jackson Jr.") appeal the summary judgment granted to the City of Caldwell, Burleson County, and Deputy John K. Bennett ("Bennett"), and the trial verdict in favor of Officer Robert Riley Baucom ("Baucom"). For the reasons

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-50066

explained below, we AFFIRM the district court's judgment and the trial verdict.

## I. Background

On Friday, April 19, Linda Jackson ("Linda") called 911, requested police assistance, and told the operator that her stepson, Chester Jackson Jr., had "kicked in the door" and was "saying he was going to kill us." A few minutes later, Linda called 911 a second time and said, "someone is going to get killed," and that Jackson Jr. had "jumped" on her husband multiple times and punched him in the face. Linda also reported that she believed Jackson Jr. was under the influence of drugs and that Jackson Jr.'s girlfriend admitted that she had given him "a little weed" but that Linda believed "it's something else."

Deputy Bennett, then with the Burleson County Sherriff's Office, was dispatched. At approximately 7:59 p.m., Bennett discovered Jackson Jr. walking on the side of the road, wearing only boots and a pair of shorts. Bennett searched Jackson Jr., placed him in the back of his vehicle, and continued to Jackson Sr.'s home.

At Jackson Sr.'s residence, Bennett met with Jackson Sr., Linda, Eddie Wilson ("Wilson"), who is Jackson Jr.'s mother, and Jackson Jr.'s fiancé. The group confirmed that Jackson Jr. had assaulted Jackson Sr., but they did not want to press any charges. Bennett explained that it was up to the state to press charges and that the situation appeared serious enough to warrant an arrest. Wilson then informed Bennett that she was attempting to have Jackson Jr. hospitalized because he was "mentally sick." Bennett asked Wilson if she had contacted My Health My Resources Authority of Brazos Valley ("MHMR"), and she responded that she had.

Wilson asked Bennett to take Jackson Jr. to the hospital in Houston. Bennett clarified that if he were to take Jackson Jr. to the hospital, he would

call the State, and Jackson Jr. would go to the hospital that has space for him. Bennett informed Wilson that if Jackson Jr. was willing to go to the hospital with her and if she was comfortable taking him, she may do so. Wilson responded that she "wants him to be stabilized" and that "in the rage he's in now," she was not sure she could take him. Bennett then attempted to speak with Jackson Jr. before returning to the larger group and informing them that no hospital would take Jackson Jr. in his condition and that Jackson Jr. was on PCP. Bennett explained that Jackson Jr. was cold to the touch and that when Bennett asked Jackson Jr. a question, it took a while for Jackson Jr. to register the question and respond. Wilson asked if Bennett was sure, and he responded "100%" and explained he has expertise in drug recognition. Bennett told Jackson Jr.'s parents that he would take Jackson Jr. to jail to let the drugs wear off, and then he could be evaluated for a hospital. Bennett explained that he would not file the assault charge but would file a public intoxication charge instead.

At approximately 8:15 PM, Jackson Jr. was booked into the Burleson County Jail. In his cell in the county jail, Jackson Jr. allegedly broke a light fixture and extracted a metal conduit. Matthew Higgins ("Higgins"), the Burleson County Jailer, observed Jackson Jr. in possession of the conduit and requested back-up to assist in taking it from Jackson Jr. as it could be used as a weapon. Officer Hammons and Officer Baucom of the Caldwell Police Department and Trooper Gilliam of the Department of Public Safety responded to assist Higgins with retrieving the conduit. Jackson Jr. was placed in handcuffs and shackles and removed from his cell to be transferred to a new cell. As he entered the new cell, Jackson Jr. became uncooperative and dropped to the ground. Baucom entered the cell, dragged Jackson Jr. from behind into the cell, raised him up, and then forced Jackson Jr. in the direction of the bed, resulting in Jackson Jr. falling to the ground, hitting his back on a concrete wall, his arm and side on a metal bed, and his head on the

No. 22-50066

side of the metal toilet. Baucom contends that Jackson Jr. grabbed Baucom's genitals which caused Baucom to drop Jackson Jr. After the fall, Jackson Jr. did not report any pain or injury, did not request medical assistance, conversed normally with officers, and had no apparent injuries.

Jail personnel conducted observations of Jackson Jr. every fifteen minutes from 11:30 pm, Saturday, April 20, to 7:00 a.m., Sunday, April 21. At approximately 3:45 a.m., Higgins attempted to remove Jackson Jr.'s restraints, and Jackson Jr. assaulted him by biting his arm. At approximately 6:18 a.m., Jackson Jr. cooperated with the jailers, who were able to loosen his restraints. At 8:45 a.m., an evaluator from MHMR arrived to evaluate Jackson Jr. The evaluator noted that Jackson Jr. appeared to be in a state of psychosis, possibly drug induced, and that he "appeared to be coming down from intoxication." Accordingly, the evaluator recommended in-patient hospitalization and was able to find him a bed at Cross Creek Hospital in Austin.

On Sunday, April 21, members of the Burleson County Sherriff's Office transported Jackson Jr. to Cross Creek Hospital. At Cross Creek, Jackson Jr. became noncompliant and aggressive. The medical staff gave him several medications, and Jackson Jr. then went into cardiac arrest. Jackson Jr. was transported to St. David's Medical Center, and no physical trauma was noted in his extremities or his head. Jackson Jr.'s urine was negative for PCP but was positive for THC. Following the cardiac arrest, Jackson Jr. sustained a brain injury, but Appellants do not claim that the cardiac arrest caused the brain injury.

## II. Procedural History

Appellants Wilson and Jackson Sr., as next friends to Jackson Jr., filed a lawsuit against Burleson County, the City of Caldwell, Bennett, and former

4

No. 22-50066

officer Baucom. Appellants filed this suit in Texas state court, and Burleson County removed the case to federal court on March 23, 2020.

On September 30, 2021, the District Court granted the City of Caldwell's Second Renewed Motion to Dismiss for Failure to State a Claim or, alternatively, Motion for Summary Judgment, which dismissed all of Appellants' claims against the City of Caldwell.

On October 5, 2021, the District Court granted summary judgment for Burleson County and Bennett on all of Appellants' claims arising from the arrest and incarceration of Chester Jackson, Jr. Appellants.

Baucom did not file a dispositive motion, and a jury trial was held to determine if Baucom used excessive force when he moved Jackson Jr. between jail cells. The jury returned a unanimous verdict that Appellants failed to prove that Baucom used excessive force against Jackson Jr. This appeal follows.

### III. Legal Standard

We review the grant of summary judgment de novo. *Lewis v. Sec'y of Pub. Safety & Corr.*, 870 F.3d 365, 368 (5th Cir. 2017). Summary judgment is proper if the movant shows that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020) (citing Fed. R. Civ. P. 56(a)). A fact is "material" if resolving it one way or another would change the outcome of the lawsuit. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009). A genuine dispute over that fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357–58 (5th Cir. 2017) (citing *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). We view the evidence in the light most favorable to the nonmovant and resolve

factual controversies in the nonmovant's favor. *Id.* at 326 (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

We review the denial of a motion for a new trial for an abuse of discretion. *Olibas v. Barclay*, 838 F.3d 442, 448 (5th Cir. 2016). "The district court abuses its discretion by denying a new trial only when there is an absolute absence of evidence to support the jury's verdict." *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 881 (5th Cir. 2013) (quoting *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991)). "If the evidence is legally sufficient, we must find that the district court did not abuse its discretion in denying a motion for new trial." *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 614 (5th Cir. 2018) (quoting *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 676 (5th Cir. 2016).

This court applies a deferential abuse of discretion standard when reviewing a district court's evidentiary rulings. *See Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 233 (5th Cir. 2016). "A district court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Heinsohn*, 832 F.3d at 233 (*quoting Nunez v. Allstate Ins. Co.*, 604 F.3d 840, 844 (5th Cir. 2010)). "The harmless error doctrine applies to the review of evidentiary rulings, so even if a district court has abused its discretion, [this court] will not reverse unless the error affected 'the substantial rights of the parties.'" *Id.* "The party asserting the error has the burden of proving that the error was prejudicial." *Ball v. LeBlanc*, 792 F.3d 584, 591 (5th Cir. 2015).

## IV. Discussion

### A. City of Caldwell

Appellants appeal the district court's decision to grant the City of Caldwell's motion to dismiss or for summary judgment. Appellants

No. 22-50066

dedicated the following singular paragraph—which cites no case law—of their 58-page brief to appeal Caldwell's win at the district court:

> The District Court granted summary judgment to the City of Caldwell in error. The City of Caldwell's response to the Appellant's Third Amended Complaint was ro [sic] file a second renewed motion to dismiss for failure to state a claim or, alternatively, motion for summary judgment. It attached affidavits, and 96 pages of other document evidence, including Baucom's alleged training and personal records. The Motion for Summary Judgment was granted without allowing the Appellants to engage in discovery. The court denied the Appellant's request for an extension of discovery deadlines, despite good cause meeting the FRCP 16 standards.

"[A]ny issue not raised in an appellant's opening brief is forfeited." *United States v. Bowen*, 818 F.3d 179, 192 n.8 (5th Cir. 2016). "One way that an appellant can forfeit an argument is 'by failing to adequately brief the argument on appeal.'" *SEC v. Hallam*, 42 F.4th 316, 327 (5th Cir. 2022) (quoting *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021)). "To be adequate, a brief must 'address the district court's analysis and explain how it erred.'" *Id.* (quoting *Rollins*, 8 F.4th at 397 n.1). Appellants in no way engaged with the district court's analysis and did not explain how the district court erred and have thus waived their appeal against the City of Caldwell. Accordingly, we affirm the district court's decision dismissing the claims against the City of Caldwell.

## B. Burleson County and Deputy Bennett

Appellants advance a number of issues concerning the district court's decision to grant summary judgment in favor of Burleson County and Bennett.

Appellants appeal the district court's decision to grant summary judgment for Bennett with respect to Appellants' false arrest claim because

Bennett did not have probable cause for the arrest. "A warrantless arrest must be based on 'probable cause.' Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (quoting *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000)). "If there was probable cause for any of the charges made . . . then the arrest was supported by probable cause, and the claim for false arrest fails." *Deville*, 567 F.3d at 164 (quoting *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995)) (emphasis removed). During Linda's 911 call, she reported that Jackson Jr. was under the influence of drugs and that his girlfriend had given him marijuana. Bennett found Jackson Jr. walking in the street with just a pair of shorts on and observed that Jr. appeared to be under the influence. Based on his training, experience, observations, and the statements of Jackson Sr., Linda, and Wilson—any of which is sufficient for a reasonable person to conclude that Jackson Jr. had committed an offense— Bennett arrested Jackson Jr. and charged him with public intoxication. Accordingly, we affirm the district court's decision granting summary judgment for Bennett on the false arrest claim.

Appellants next appeal the district court's decision to grant summary judgment for Burleson County on Appellants' claims under the Americans with Disabilities Act and Rehabilitation Act. Appellants' briefing is not clear, but it appears that they rest these claims on three allegations: that Jackson Jr. was arrested instead of taken to a mental health facility; that Jackson Jr. was denied access to medical care while in custody; and that restraints were used while Jackson Jr. was in custody. To make out a prima facie case under Title II, a plaintiff must show "(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public

No. 22-50066

entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004). "A critical component of a Title II claim for failure to accommodate, however, is proof that 'the disability and its consequential limitations were known by the [entity providing public services].'" *Windham v. Harris Cnty., Texas*, 875 F.3d 229, 236 (5th Cir. 2017) (citing *Jin Choi v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, 633 Fed. Appx. 214, 215 (5th Cir. 2015)). "Mere knowledge of the disability is not enough; the service provider must also have understood 'the limitations [the plaintiff] experienced . . . as a result of that disability.'" *Windham* 875 F.3d at 236 (quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996). Thus, the burden falls on the plaintiff "to specifically identify the disability and resulting limitations." *Taylor*, 93 F.3d at 165. When a plaintiff fails to request an accommodation in this manner, he can prevail only by showing that "the disability, resulting limitations, and necessary reasonable accommodation" were "open, obvious, and apparent" to the entity's relevant agents. *Id.*

Regarding Appellants' first contention, the undisputed evidence shows that Bennett believed that Jackson Jr. had a mental illness while he was simultaneously intoxicated in public. Appellants cite no case law that would prevent Bennett from arresting Jackson Jr. for an illegal act because he also has a mental illness. Concerning Appellants' second contention, that the ADA/Rehabilitation Act was violated when Jackson Jr. was denied access to medical care while in custody, this court has previously held that "[t]he ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'" *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)). Lastly, the Appellants provide no support for their contention that Jackson

Jr. was left "in leg irons and handcuffs for hours overnight due to his disability." Therefore, we affirm the district court's decision granting Burleson County summary judgment on Appellants' ADA and Rehabilitation Act claims.

Appellants next advance a "conditions of confinement" claim under the Due Process Clause and the Eighth Amendment of the United States Constitution. Appellants contend that the use of leg irons combined with Jackson Jr. being left handcuffed in his cell with the lights on was torture and violated the Constitution since it "served no legitimate governmental purpose other than punishing him." The Supreme Court has held that "if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell v. Wolfish*, 441 U.S. 520, 539 (1979). The undisputed evidence shows that the restraints were used because of Jackson Jr.'s behavior, including his assault on his father, the destruction of the light fixture in his first cell, the destruction of a wall phone in his second cell, the use of the metal conduit as a potential weapon, the alleged grabbing of Baucom's genitals, and the biting of Higgins' arm. Moreover, Jackson Jr. was closely monitored, and as soon as he was cooperative, his restraints were removed. As the conduct of the County appears to be reasonably related to a legitimate governmental objective—keeping Jackson Jr. and jail personnel safe—we affirm the district court's decision to grant summary judgment to the County on the conditions of confinement claim.

Appellants next appeal the district court's decision to grant summary judgment for Burleson County on Appellants' claims for failure to provide medical attention. Appellants argue that summary judgment was inappropriate because the MHMR sent a Qualified Mental Health Professional to evaluate Jackson Jr. instead of a doctor or some other more qualified health professional. To state a claim under the Eighth Amendment

based on failure to provide adequate medical treatment, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A "prisoner must prove that the officials, despite their actual knowledge of the substantial risk, denied or delayed the prisoner's medical treatment." *Petzold v. Rostollan*, 946 F.3d 242, 249 (5th Cir. 2019). Appellants have satisfied none of the criteria to establish a credible failure to provide medical attention claim. Accordingly, we affirm the district court's decision in granting summary judgment to Burleson County on Appellants' claim for failure to provide medical attention.

Appellants also appeal the district court's decision to grant summary judgment to Burleson County on their claim that the County failed to supervise and train Bennett. 42 U.S.C. § 1983 creates a cause of action for deprivations of constitutional and federal statutory rights by persons acting under of color of state law. A county qualifies as a "person" under § 1983 and may be held liable for official policies or customs or the actions of its employees taken pursuant to those policies and customs. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). This official policy or custom must be the "moving force" of the plaintiff's injury, and like all § 1983 claims, the injury must be a violation of a right secured by the Constitution or federal law. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). When the policy or custom alleged is a failure to train or supervise, deliberate indifference must be shown. *See City of Canton*, 489 U.S. at 388, *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009). "For liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (citing *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992)). "Moreover, to prove deliberate indifference, a plaintiff must demonstrate 'at least a pattern of

similar violations arising from training that is so clearly inadequate as to be obviously likely to result in a constitutional violation.'" *City of Shreveport*, 397 F.3d at 292 (quoting *Burge v. St. Tammany Par.*, 336 F.3d 363, 370 (5th Cir. 2003)).

Appellants fail at nearly every turn in making their 1983 claim. Appellants fail to show deliberate indifference on the part of Burleson County in their alleged failure to train or supervise. Appellants further fail to allege with specificity how Burleson County's training program is defective. Appellants also fail to allege a pattern of similar violations. Lastly, Appellants fail to show any violation of a constitutionally protected right. Thus, we affirm the district court's decision to grant summary judgment for Burleson County with respect to Appellants' failure to supervise and train Claim.

## C. Robert Riley Baucom

Appellants' appeal the district court's decision to not allow the introduction of character evidence, specifically, Baucom's plea of "no contest" to a Class A misdemeanor of official oppression. Appellants contend that "the district court erred in finding Federal Rule of Evidence 404(a)(2), exceptions to the general prohibition on character evidence that apply only in criminal cases." Fed. R. Evid. 404 (a)(2) is titled "Exceptions for a Defendant or Victim in a Criminal Case" and provides that "The following exceptions apply in a criminal case." The district court correctly held that the Federal Rules of Evidence disallow character evidence in civil cases and that the exceptions listed in Federal Rule of Evidence 404(a)(2) only apply in criminal cases, as the title and content of Rule 404(a)(2) make clear. We affirm the district court's decision not to allow character evidence to be admitted under Rule 404(a)(2).

Appellants also contend that the district court erred when it granted Baucom's Motion to exclude (1) the Texas Rangers Report, which included

information concerning the investigation into Baucom for official oppression, and; (2) any attempt to elicit testimony that there was a criminal investigation or; (3) that Baucom pled no contest to a charge of official oppression. "We afford the district court broad discretion in its evidentiary rulings on relevance." *Hicks-Fields v. Harris Cnty., Texas*, 860 F.3d 803, 809 (5th Cir. 2017) (citing *United States v. Young*, 655 F.2d 624, 626 (5th Cir. 1981)). "A district court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Heinsohn*, 832 F.3d at 233 (quoting, 604 F.3d at 844). "If the district court abused its discretion, the harmless error doctrine applies, and the ruling will be reversed only if it affected the substantial rights of the complaining party." *Nunez*, 604 F.3d at 844 (quoting *Knight v. Kirby Inland Marine, Inc.*, 482 F.3d 347, 351 (5th Cir. 2007)). Appellants provide no explanation or case law that would support a finding that the district court abused its discretion. Moreover, even if the district court had made an error in granting Baucom's motion, Appellants have made no showing as to how that ruling has affected their substantial rights. Accordingly, we affirm the district court's decision regarding the motion *in limine*.

Appellants also appeal the district court's imposition of a five-hour limitation per side for the trial. "FED. R. EVID. 403 and 611(a) give the district court wide discretion in the management of its docket and the presentation of evidence." *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 520 (5th Cir. 1994). "A party is not entitled, as a matter of right, to put on every witness he may have." *Id.* (citing *Manbeck v. Ostrowski*, 384 F.2d 970 (D.C. Cir. 1967)). In the management of its docket, the court has an inherent right to place reasonable limitations on the time allotted to any given trial. *Deus*, 15 F.3d at 520 (citing *United States v. Reaves*, 636 F. Supp. 1575 (E.D. Ky. 1986)). The district court forewarned the parties that each would have five hours to present its case. The record indicates that Appellants improvidently

squandered much of their time and Appellants even concede in their brief that they employed "stall tactics" when they encountered technical difficulties. Appellants have not pointed to any evidence that they were unable to present that would have aided their case in any significant way. We find no error in the district court's time limitation.

Appellants argue that the district court's admonishment of Appellants' counsel for violating the "Golden Rule" of closing arguments was in error. "This court has forbidden plaintiff's counsel to explicitly request a jury to place themselves in the plaintiff's position and do unto him as they would have him do unto them." *Stokes v. Delcambre*, 710 F.2d 1120, 1128 (5th Cir. 1983). Such arguments encourage the jury to "decide the case on the basis of personal interest and bias rather than on the evidence." *Loose v. Offshore Navigation, Inc.*, 670 F.2d 493, 496 (5th Cir. 1982) (quoting *Ivy v. Security Barge Lines, Inc.*, 585 F.2d 732, 741 (5th Cir. 1978)). The invocation of the Golden Rule does not create immutable error. The trial judge may, by appropriate instruction, salve the suit. *Loose*, 670 F.2d at 497. Appellants' argument that the jury should be "glad" their family member was not subjected to a use of force assumes that Baucom's use of force violated the law—putting the jury's focus on damages rather than liability—and represents the kind of emotional appeal the golden rule is designed to prevent. Thus, district court was compelled to salve the suit, and we find no error.

Appellants also argue that they "were prejudiced by the lack of presence of any African Americans on the jury venire or the final jury" and that "the selection process did not allow for a fair-cross-section and was unfair and unreasonable since there was 0% African Americans in the venire." In order to establish a *prima facie* violation of the fair cross-section requirement, Appellants must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) the representation of this

group in the venire panel is not reasonable in relation to the number of such persons in the community; (3) that this under-representation is due to systematic exclusion in the jury selection process. *Duren v. Missouri,* 439 U.S. 357, 364 (1979). Appellants make no showing that the absence of African Americans is due to systemic exclusion in the jury selection process and have therefore failed to establish a *prima facie* violation of the fair cross-section requirement. Thus, we affirm the district court's decision to deny Appellants' motion to strike the venire panel on the basis of race.

Lastly, Appellants argue that a new trial was required as a "rational trier of fact could not have reached the same conclusion based on the evidence in the record." Appellants' motion for a new trial is one paragraph long and primarily consists of the standard for an excessive force claim. The district court denied the motion and explained: "Plaintiffs present no facts or evidence. Plaintiffs merely include a paragraph of information about excessive force standards, without mounting a challenge to the jury instructions. Without more, this Court will not 'invade the fact-finding province of the jury.'" Appellants make no contention that the district court abused its discretion in denying the motion for a new trial and again only offer information regarding excessive force. As Appellants make no contention nor showing that there was an "absolute absence of evidence to support the jury's verdict," we find that the district court did not abuse its discretion, and we affirm the district court's denial of Appellants' motion for a new trial.

## V. Conclusion

We AFFIRM the district court's summary judgment as to Burleson County and the City of Caldwell and AFFIRM the district court's judgment as to the verdict for Baucom.