# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 21, 2025

Lyle W. Cayce
Clerk

———————

No. 23-30848

———————

Jacqueline Carter, *as next of friend on behalf of* William H Carter,

*Plaintiff—Appellant*,

*versus*

City of Shreveport; Corporal Butler; Corporal Hurst; Debbie Strickland; T. Tobin; T. Nesbitt; B. Norsworthy; J. D. Smith-Pfender,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:17-CV-1289

———————————————————————

Before Richman, Willett, and Douglas, *Circuit Judges*.

Priscilla Richman, *Circuit Judge*:

William Carter, who is paraplegic and confined to a wheelchair, had several bedsores on his buttocks and hip before he spent eight days at the Shreveport City Jail for unauthorized use of 911. Plaintiff, Carter's mother suing as his "next friend," claims the jail did not provide care for these wounds, resulting in their infection and Carter's hospitalization weeks after release. Plaintiff sued under the Americans with Disabilities Act and

No. 23-30848

Rehabilitation Act (ADA/RA claim), 42 U.S.C. § 1983, and Louisiana state negligence law.  Before trial, the district court granted Defendants' motion to exclude the expert testimony of Dr. Joel Nitzkin.  After a jury trial on all claims, the district court granted Defendants' Rule 50 motion on the ADA/RA claim.  The jury then returned a verdict for Defendants on both the § 1983 and state-law claims.

Plaintiff challenges both the grant of the Rule 50 motion and the exclusion of Dr. Nitzkin.  We affirm the district court's judgment.

## I

Carter is paralyzed from the waist down and, as a result, suffers from bedsores on his buttocks and hip that require routine dressings, which his mother typically performs.  He was arrested on October 10, 2016, for unauthorized use of 911 and spent a total of eight days in the Shreveport City Jail.  In jail, Carter was placed in a segregated cell, a standard practice for wheelchair-bound inmates out of concern for their safety.

On October 12, Dr. Dixon, who visits the jail three times a week, examined Carter.  Dr. Dixon sees general-population inmates in a separate room, but he usually examines segregated inmates through the bars of their cells.  Dr. Dixon identified the bedsores and noted a need for supplies for "wet to dry" bandage changes.  Dr. Dixon testified that by making this note, he "intend[ed] to be telling jailers that [Carter] needs to have these dressing changes" and requires assistance with the changes, but the jailers testified that they did not understand Dr. Dixon to be requesting or instructing them to do anything.  One jailer testified that she did not know what "wet-to-dry dressing" meant, and another testified that she did not understand Dr. Dixon as "order[ing] that jailers take any action."  Generally, the jailers do not perform dressing changes (though they might minorly assist with tape), and they are not trained regarding wet-to-dry bandaging.

2

No. 23-30848

Five days later, on October 17, Dr. Dixon again examined Carter, noting "inmate complains of butt wounds" and repeating the need for re-dressing. This time, he went on to state that "inmate requires assistance with dressing changes" and "inmate needs more assistance than the jail can provide." Generally, when Dr. Dixon recognizes the jail's inability to care for a prisoner, the jail will either send the prisoner to the hospital or facilitate his release. Dr. Dixon testified at trial that he did not recommend Carter be sent to the hospital. The jail facilitated Carter's release, and he returned home the next day. Allegedly, his wounds had become infected as a result of his stay in jail. Weeks later, he was admitted to the hospital with infected bedsores, a urinary tract infection, and other ailments.

Plaintiff, Carter's mother, filed suit as his "next friend," alleging three claims: (1) failure to provide medical care (42 U.S.C. § 1983); (2) failure to provide accommodations (ADA/RA); and (3) negligence (Louisiana state law). Before trial, the district court excluded the testimony of Plaintiff's proposed expert witness, Dr. Joel Nitzkin, for lack of qualifications and reliability. Dr. Nitzkin was prepared to testify as to the inadequacy of jail policies and Carter's deterioration while in custody. After a jury trial on all claims, the court granted Defendants' Rule 50 motion for judgment as a matter of law in part on the ADA/RA claim. The court regarded the ADA/RA claim as a complaint about medical treatment, not an actionable disability claim. The remaining two claims were submitted to the jury, which returned a verdict for Defendants. On appeal, Plaintiff seeks reversal of the Rule 50 ruling regarding the ADA/RA claim and reversal of the ruling excluding Dr. Nitzkin's testimony.

## II

Plaintiff challenges the district court's grant of the Rule 50 motion regarding the ADA/RA claim. We review the grant of a motion for

3

judgment as a matter of law de novo, applying the same standard as the district court.[1]  Rule 50 permits courts to grant a motion for judgment as a matter of law if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."[2]  "In evaluating the evidence, this court 'credit[s] the non-moving party's evidence and disregard[s] all evidence favorable to the moving party that the jury is not required to believe.'"[3]

Title II of the ADA states: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[4]  A local government is a "public entity" as defined in the statute, and the Supreme Court has categorized state prisons as such.[5]

The Rehabilitation Act, a predecessor statute to the ADA, protects an "otherwise qualified individual with a disability in the United States . . . [from] be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination under any program or activity receiving Federal financial assistance," which includes any "instrumentality" of a local government.[6]  "The remedies, procedures, and rights available under the Rehabilitation Act parallel those available under the

---

[1] *See Apache Deepwater, L.L.C. v. W&T Offshore, Inc.*, 930 F.3d 647, 652-53 (5th Cir. 2019); *Janvey v. Romero*, 817 F.3d 184, 187 (5th Cir. 2016).

[2] Fed. R. Civ. P. 50(a)(1); *see Apache Deepwater, L.L.C.*, 930 F.3d at 653.

[3] *Apache Deepwater, L.L.C.*, 930 F.3d at 653 (alterations in original) (quoting *Janvey*, 817 F.3d at 187).

[4] 42 U.S.C. § 12132.

[5] 42 U.S.C. § 12131(1)(A); *see Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

[6] 29 U.S.C. § 794(a), (b)(1)(A).

ADA," so the "[j]urisprudence interpreting either section is applicable to both."[7]

To succeed on this claim, Plaintiff must show:

(1) that [Carter] is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.[8]

Two avenues to ADA liability include failure to accommodate and disparate treatment.[9] Both theories require a showing of intentional discrimination.[10]

In this court, Plaintiff submits both theories, though the parties dispute whether disparate treatment is properly raised on appeal. We first address the failure-to-accommodate theory.

**A**

"In addition to their respective prohibitions of disability-based discrimination, both the ADA and the Rehabilitation Act impose upon public entities an affirmative obligation to make reasonable accommodations for

---

[7] *Cadena v. El Paso County*, 946 F.3d 717, 723 (5th Cir. 2020) (alteration in original) (quoting *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002)); *see also* 42 U.S.C. § 12133.

[8] *Cadena*, 946 F.3d at 723 (quoting *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004)).

[9] *J.W. v. Paley*, 81 F.4th 440, 449-50 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 2658 (2024).

[10] *Id.*

disabled individuals."[11]   The failure-to-accommodate theory augments the last element of the general ADA claim such that discrimination "by reason of his disability" is established "by showing that the disability and its consequential limitations were known by the covered entity, and the entity failed to make reasonable accommodations."[12]  This knowledge requirement is satisfied when either (1) the plaintiff "'specifically identif[ies] the disability and resulting limitations' and . . . request[s] an accommodation in 'direct and specific' terms,"[13] or (2) "'the disability, resulting limitation[s], and necessary reasonable accommodation' were 'open, obvious, and apparent' to the entity's relevant agents."[14]

The parties do not dispute that Carter had a qualifying disability.[15] Nor do they dispute that medical care, in general, can be a "service" covered by the statute.[16]  Rather, the parties dispute (1) whether the allegations amount only to negligent medical care, rather than a failure to accommodate, and (2) whether Carter's condition was "open and obvious."

The district court dismissed the ADA/RA failure-to-accommodate claim because the failure to change bandages was "not an accommodation,

---

[11] *Cadena*, 946 F.3d at 723-24 (quoting *Bennett-Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005)).

[12] *Valentine v. Collier*, 993 F.3d 270, 290 (5th Cir. 2021) (first quoting *Windham v. Harris County*, 875 F.3d 229, 235 (5th Cir. 2017); and then citing *Smith v. Harris County*, 956 F.3d 311, 317 (5th Cir. 2020)).

[13] *Windham*, 875 F.3d at 237 (citation omitted) (first quoting *Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 165 (5th Cir. 1996); and then quoting *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 261 (1st Cir. 2001)).

[14] *Id.* (quoting *Taylor*, 93 F.3d at 165).

[15] *See Valentine*, 993 F.3d at 289 ("There is no question that the mobility-impaired subclass has a qualifying disability . . . .").

[16] *See Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

[but] a medical treatment." Defendants similarly argue that bandage changes are not a service provided by the jail, so the lack of changes is not an actionable "accommodation" under the ADA. Plaintiff responds that the claim is valid because the wound care Carter needed was "not simply failing to attend to his medical needs but to his disability in that the need is directly related to his disability."

First, a failure-to-accommodate claim must identify the accommodation at issue. Though Plaintiff often uses the language of denial of "access to medical care," the complained-of accommodation is the lack of dressing changes—specific medical treatment.[17]

"Courts confirm that the ADA does not typically provide a remedy for negligent medical treatment."[18] The Supreme Court has not held that "the ADA imposes on the States a 'standard of care' for whatever medical services they render," although it has maintained that "States must adhere to the ADA's nondiscrimination requirement with regard to the services they in fact provide."[19] We have affirmatively held that the "ADA does *not* set out a standard of care for medical treatment" and that the "ADA is not

---

[17] *See, e.g.*, *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990) (considering the frequency of bandage changes a medical-treatment issue); *see also Brown v. Sheriff Turlich*, No. CV 24-0725, 2024 WL 3799485, at *3 (E.D. La. June 17, 2024) (noting bandage changes are related to medical treatment), *report and recommendation adopted*, No. CV 24-725, 2024 WL 3791242 (E.D. La. Aug. 13, 2024); *Harvey v. Wilson*, No. 4:22-CV-61 (CDL), 2024 WL 1259447, at *1 n.1 (M.D. Ga. Mar. 25, 2024) (describing bandage changes as a medical treatment).

[18] *Cadena v. El Paso County*, 946 F.3d 717, 726 (5th Cir. 2020) (citing *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012)); *see also Hale v. Harrison Cnty. Bd. of Supervisors*, 8 F.4th 399, 404 n.† (5th Cir. 2021) (quoting *Nottingham*, 499 F. App'x at 377).

[19] *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 603 n.14 (1999).

violated by a prison's simply failing to attend to the medical needs of its disabled prisoners."[20]

Because bandage changes are a medical treatment, the most Carter can complain about is (1) the decision to release him instead of sending him to the hospital or (2) the delay from October 12 to October 17 in realizing Carter needed more care than the jail could provide. Regarding the first complaint, the relative prudence between two medical decisions is not actionable under the ADA.[21] The second complaint is a similar question of medical competence that Carter had the opportunity to vindicate in his other claims. As the Seventh Circuit noted, the ADA does not provide Carter with an "end run around" the jury's adverse verdict.[22]

Plaintiff's failure-to-accommodate claim alleges no more than medical negligence, which is not actionable under the ADA. Accordingly, we do not evaluate whether Carter's need was "open and obvious."

## B

For the disparate treatment theory, Plaintiff argues Carter's placement in a segregated cell due to his disability caused Dr. Dixon to see

---

[20] *Hale*, 8 F.4th at 404 n.† (emphasis added) (first quoting *Walls v. Tex. Dep't of Crim. Just.*, 270 F. App'x 358, 359 (5th Cir. 2008) (per curiam); and then quoting *Nottingham*, 499 F. App'x at 377).

[21] *See, e.g.*, *Cadena*, 946 F.3d at 726 (citing *Nottingham*, 499 F. App'x at 377); s*ee also Thomas v. Nino*, No. 23-40385, 2024 WL 4039743, at *3 (5th Cir. Sept. 4, 2024) (per curiam) (stating disagreement with medical treatment is not discrimination based on a disability); *Hale v. Abangan*, No. 18-60183, 2022 WL 4494112, at *1 (5th Cir. Sept. 27, 2022) (per curiam) (characterizing plaintiff's complaint as a "disagreement with his medical treatment" concerning chronic back pain treatment and dietary needs); *Chupka ex rel. C.C. v. Pflugerville Indep. Sch. Dist.*, No. 21-50356, 2022 WL 1056101, at*2 (5th Cir. Apr. 8, 2022) (per curiam) (noting a "potentially negligent medical decision" is not actionable under the ADA).

[22] *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996).

him through the bars without any "hands on care," amounting to "a denial of access to medical care." The parties dispute whether this argument was preserved for appeal. Assuming without deciding that Plaintiff did not forfeit this argument, our caselaw is dispositive on the merits.

Though "[o]ur case law provides more guidance for failure-to-accommodate claims than disparate treatment claims," both require a showing of intentional discrimination.[23] Plaintiff has not shown that Carter's placement in a segregated cell for his safety rose to intentional discrimination. In *J.W. v. Paley*,[24] we recently considered a similar argument. There, after a special-needs student's violent episode, a school resource officer, concerned for the student's safety, attempted to keep the student inside the school.[25] The officer ultimately resorted to tasing the student when he did not comply.[26] The student argued that because his disability caused the officer to keep him inside, and the officer used his taser to that end, that could amount to discrimination against the student based on his disability.[27] We disagreed: While the decision to tase the student may have been unwise, there was no evidence that the officer intentionally discriminated based on the student's disability.[28] Rather, the officer's "desire to keep [the student] inside the school arose from *consideration* of the vulnerabilities surrounding

---

[23] *J.W. v. Paley*, 81 F.4th 440, 449-50 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 2658 (2024).

[24] 81 F.4th 440 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 2658 (2024).

[25] *Id.* at 445.

[26] *Id.*

[27] *Id.* at 450.

[28] *Id.* at 450-51.

[his] disability, not from indifference, much less ill-will or discriminatory animus."[29] Such is the case here.

While the jailers placed Carter in a segregated cell on account of his disability, this was out of consideration for his disability, not from animus against it. Though Plaintiff contends this different treatment was based on a "stereotype," Plaintiff recognizes it was to protect Carter from the general prison population. The segregated cell may be better understood as an accommodation based on an open and obvious condition. Indeed, "[i]f different were always discriminatory, then even disability *accommodations* would be discriminatory."[30] The failure of Dr. Dixon to enter the cell, standing alone, is not evidence of intentional discrimination against a disabled person.

Because, at most, Plaintiff's ADA/RA claim amounts to negligent medical treatment, not discrimination due to Carter's disability, the district court did not err in granting Defendants' Rule 50 motion.

### III

Plaintiff also challenges the district court's exclusion of expert Dr. Joel Nitzkin's testimony. However, that testimony was offered only to support Plaintiff's (1) *Monell*[31] claims, which are not at issue in this appeal because the Plaintiff has not appealed the district court's grant of summary judgment in favor of the City of Shreveport on those claims, and (2) ADA claims,

---

[29] *Id.* at 451; *see also Clark v. Dep't of Pub. Safety*, 63 F.4th 466, 471 (5th Cir. 2023) (per curiam).

[30] *Paley*, 81 F.4th at 451.

[31] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

which fail as a matter of law, for the reasons considered above. Accordingly, we do not address the exclusion of this expert testimony.

\*      \*      \*

For the foregoing reasons, the judgment of the district court is AFFIRMED.